## CROFT v. JOHNSON et al.

1. CHANCERY PRACTICE. *Dismissal of bill. Effect of. Res adjudicata. Estoppel.* Where a decree against the plaintiff, upon appeal, has been affirmed and the cause remanded by the Supreme Court to be further proceeded with, the defendant has an interest thereby established, which cannot be defeated by the plaintiff's dismissal of his bill, without defendant's consent before final decision, such action will be a bar to any other suit, upon matters embraced in the same litigation.

2. SAME. *Same. Partnership. Estoppel.* The bill in such case having been filed by a firm, the estoppel cannot be avoided by another suit insisting upon the same rights, in the individual name of one of the partners.

FROM GREENE.

Appeal from the Chancery Court. H. C. SMITH, Chancellor.

FELIX A. REEVE for complainant.

BARTON & McKEE for defendant.

NICHOLSON, C. J., delivered the opinion of the court.

Complainant entered into a written contract on the 6th of May, 1862, with Wm. Girdner and others, a building committee of the Johnson & Allen Bridge Co., to perform certain masonry on a toll bridge across Nolachucky river. A former bridge had been swept away by a freshet before it was completed, and the building committee contracted with complainant to construct an abutment, wing, wall, etc., for which work

he was to be paid a specified sum. This work was performed, and complainant files his bill for an account as to the amount due him, alleging that he has been .refused payment by the company, etc.

Complainant alleges further that the article of agreement referred to was made an exhibit in a suit instituted by one W. A. Stover and himself against said company in April, 1863, which suit was finally dismissed by them at the May term, 1871, of the chancery court at Greeneville; but that there was no adjudication upon the instrument, he therefore insists upon his right to sue upon it again in his own name. He charges also that the Johnson & Allen Bridge Co. is a chartered corporation, chartered by the County Court of Greene county in 1863. He seeks to hold the members of the building committee individually liable, as well as the Johnson & Allen Co. as a corporation. The prayer is, that the building committee by name, and the corporation, be made defendants, but we find in the record no process for bringing the corporation before the court.

Two of the members of the building committee, Allen and Girdner, answer the bill. They admit the original contract, by which Stover and Croft undertook to build the bridge, and the contract with complainant for doing the masonry work, on which he now sues; but they say that he has been more than paid for the work, and that nothing remains due to him for the work, and that nothing remains due to him from them. They say that in the suit of Stover and Croft against defendants, the agreement now sued

on was presented, and the cause heard by the chancery court, and by the Supreme Court at its September term, 1878, when the decree of the chancery court was affirmed and remanded.

They state that in. that case an account was taken showing the statement of the accounts between said Stover and Croft and defendants as the building committee, and in this account the master made allowance for the work covered by the agreement now sued on in favor of Stover and Croft, of which firm complainant was a member.

They state that the account in that cause showed that Stover and Croft were indebted to the building committee. After allowing all credits for work they refer to the record in that cause and make it part of their answer. They state that after the decree of the chancellor was affirmed and the cause remanded, Stover and Croft withdrew their suit, and the costs were adjudicated against them.

By reference to the record of the case of Stover and Croft against the building committee, it appears that they sued as partners in the construction of the bridge, and the claim now sued on by Croft as his individual claim, was brought forward and relied on as a partnership claim, and was so treated and allowed in taking the account. It appears also that in response to the allegations of that bill, and their demand for an account, the building committee, who are the present defendants, insisted that Stover and Croft had been fully paid, but indicated a willingness that the account should be taken. In fact, it was on the

motion of these defendants that the order of reference
for an account was made by the court. The matters
to be reported upon were specified in detail, but all
questions thereon were reversed.

It appears, further, that one material question in
that case was, whether the contractors, Stover and
Croft, or the bridge company, were to bear a heavy
loss, produced by a freshet during the time the first
bridge was being built. Stover and Croft. insisted
that the company should bear the loss, in which event
they insisted on a much larger amount than they were
entitled to under their contract.

Proof was taken on the order of reference, and a
report made by the master, showing that Stover and
Croft had been largely overpaid, according to their
contracts. No exception was filed to this report, but
as the result would be materially changed if it should
be held that the loss from the freshet was to fall on
the company, it was deemed proper to have that ques-
tion adjusted before any action was taken on the re-
port. Accordingly, that question was submitted to the
chancellor, who held that upon a proper construction
of the contract the loss fell on the contractors and
not on the company. Stover and Croft appealed from
that decree to this court when the decree of the
chancellor was affirmed and the cause remanded. When
the cause went back to the chancery court, Stover
and Croft, of their own accord, dismissed their suit,
and judgment was rendered against them for costs.
It does not appear that defendants either assented to
the dismissal or opposed it.

It is to be observed that at the time the chancellor determined that the loss arising from the freshet was to fall on Stover and Croft, the proof had been taken and the report thereon made, from which it appeared that the claim now set up by Croft had been paid. Assuming the report to be sustained by the proof, it is clear that the result of the litigation depended upon the legal question as to whether the loss by the freshet was to fall on the contractor or the bridge company? When that question was decided in favor of the bridge company they had an interest thereby established which complainants could not defeat by dismissing their bill without the consent of defendants. It was so held at the present term in the case of *Ellis* v. *Smith*.

Defendants then had a right to have the report passed upon by the chancellor, and as no exception was filed thereto, to have it confirmed. The dismissal of their suit, under such circumstances, was tantamount to a decision on the merits of the case, and is a bar to any other suit on any of the matters litigated in that suit. The question whether the claim now sued on had been paid was directly in issue in that suit, and it cannot again be litigated in another suit. The result of that proceeding was to establish the fact that the claim had been paid to Stover and Croft, who then sued for it as partners. The legal effect of the dismissal cannot now be avoided by instituting suit on the same claim in the name of one of the partners. By the record in that case Croft is estopped from asserting an individual claim to the indebtedness sought to be enforced. That record

furnishes conclusive evidence that it is a partnership claim, and it is, in legal contemplation, now being sued on for the benefit of the firm.

But outside of this view of the case we are satisfied that the proof in the record of the former suit sustains the report of the clerk and master, and that nothing was due to Stover & Croft, the loss by the freshet being thrown upon them.

We are, therefore, of opinion that the decree of chancellor was erroneous, and it must be reversed and the bill dismissed with costs.